TODD D. SIMON ET AL., APPELLANTS, V.
CITY OF OMAHA, APPELLEE.
677 N.W.2d 129

Filed April 9, 2004.   No. S-02-1061.

James D. Sherrets, Theodore R. Boecker, Jr., and Kimberly K. Carbullido, of Sherrets & Boecker, L.L.C., for appellants.

Paul D. Kratz, Omaha City Attorney, and Bernard J. in den Bosch for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Appellants, Todd D. Simon, Frank A. Pane, and Jamaica Partnership, filed a petition in the district court for Douglas County against appellee, City of Omaha, seeking injunctive and declaratory relief, after the Omaha City Council adopted a resolution that approved the "Omaha Performing Arts Society Douglas Street Heritage Development Project Redevelopment Plan" (redevelopment plan) for downtown Omaha. A portion of the resolution declared real property located within the proposed redevelopment plan, including properties owned by appellants, as "blighted" and

"substandard." In their petition, appellants claimed appellee was "target[ing their properties] for eminent domain acquisition." In an amended resolution, appellants' properties were deleted from the area included within the redevelopment plan.

Appellants moved for costs and attorney fees. The district court denied the motion. The parties stipulated to the dismissal of the petition. Appellants appeal the order of the district court denying their motion for costs and attorney fees. We affirm.

## STATEMENT OF FACTS

The pertinent facts, which are essentially undisputed, are as follows:

Appellants are the owners of real property located at 112 South 11th Street, 1110 Douglas Street, and 1112 Douglas Street in Omaha. On February 5, 2002, the Omaha City Council adopted resolution No. 137-280. The resolution approved the redevelopment plan, which anticipated the development of a performing arts complex in a region of downtown Omaha. Although the resolution adopted the redevelopment plan and declared the downtown area covered by the redevelopment plan as "blighted" and "substandard," nothing within the resolution itself authorized the acquisition of real property in the area covered by the redevelopment plan.

Appellants' properties are located within the downtown area covered by the redevelopment plan. As such, appellants' properties were declared "blighted" and "substandard" by resolution No. 137-280.

On February 19, 2002, appellants filed a "Petition for Temporary Restraining Order, Temporary and Permanent Injunction and Declaratory Judgment," in the district court for Douglas County. In their 11-count petition, appellants alleged that the resolution's declaration of their properties as "blighted" and "substandard" was appellee's first step in a redevelopment plan that contemplated appellee taking appellants' properties by eminent domain. In their petition, appellants raised several legal challenges to the city council's adoption of resolution No. 137-280, including allegations that such action violated state statute, denied appellants due process and equal protection, and was induced through misrepresentation. Appellants sought, inter

alia, injunctive relief enjoining "the effectiveness of any declaration that their properties . . . are blighted or substandard," and "a declaratory judgment that the declaration [of their] properties [as] blighted and substandard is arbitrary, capricious and invalid under law."

On February 20, 2002, the district court entered an order temporarily restraining the city council's "action of February 5, 2002 labeling [appellants'] properties [as] 'blighted and substandard' . . . from becoming effective." The temporary restraining order specifically provided, however, that the order was "without prejudice to [appellee] proceeding with work on its redevelopment agreement."

On February 26, 2002, the parties appeared before the district court on appellee's motion to quash and to continue proceedings, which motion sought, in part, a continuance of any further proceedings while appellee sought to amend resolution No. 137-280 to remove appellants' properties from the redevelopment plan. The district court granted the continuance, and by agreement of the parties, the temporary restraining order was continued "until further order of the Court." On March 26, the city council amended resolution No. 137-280. Although appellants' properties remained designated as "blighted" and "substandard," the amendment removed appellants' properties from the redevelopment plan. Thereafter, the parties informed the district court that all issues in the dispute had been resolved.

On April 9, 2002, appellants' counsel informed the court that appellants intended to voluntarily dismiss their action. Also on April 9, the district court heard argument and received evidence on appellants' motion for costs and attorney fees which had been filed April 8. In their motion, appellants alleged they were due costs and attorney fees based on essentially three different theories: (1) federal civil rights statutes, 42 U.S.C. §§ 1983 and 1988 (2000); (2) the Nebraska eminent domain statutes, see Neb. Rev. Stat. § 76-701 et seq. (Reissue 2003); and (3) the common fund doctrine.

With respect to the federal civil rights statutes, appellants alleged that they had terminated and/or avoided an infringement of their federal constitutional rights encompassed in § 1983 and were therefore entitled to attorney fees under § 1988. With respect

to the eminent domain statutes, appellants alleged that they had successfully terminated a taking by eminent domain and were therefore entitled to attorney fees pursuant to § 76-726(1). Finally, with respect to the common fund doctrine, appellants alleged that they were entitled to an award of costs and attorney fees, because they had "avoided an unnecessary and illegal land-banking and permanent taking of their property and saved substantial amounts of public funds as a result of this litigation."

On August 28, 2002, the district court entered an order denying appellants' motion for costs and attorney fees. The court rejected the theories advanced by appellants by noting that in the instant case, "there was no verdict, no *prevailing* party, no admission of error, [no] deprivation of procedural rights, nor was there an illegal or improper contract that was addressed so as to benefit taxpayers and the public in general." (Emphasis in original.) The court noted that its involvement had been de minimis and remarked that an award of fees would "arguably be a punishment to [appellee] for contributing to the amicable resolution of the parties' dispute" and "could have a chilling effect on future settlements."

On September 17, 2002, the district court dismissed appellants' lawsuit based upon the stipulation of the parties that the action was moot. Thereafter, appellants filed the instant appeal, challenging the district court's order denying their motion for costs and attorney fees.

## ASSIGNMENT OF ERROR
Appellants assign various errors. These various assignments of error can be restated as one: The district court erred in denying appellants' motion for costs and attorney fees.

## STANDARDS OF REVIEW
■■■■ Statutory interpretation presents a question of law, on which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *In re Interest of Tamantha S., ante* p. 78, 672 N.W.2d 24 (2003). On appeal, a trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion. *In re Trust Created by Martin*, 266 Neb. 353, 664 N.W.2d 923 (2003);

*Koehler v. Farmers Alliance Mut. Ins. Co.*, 252 Neb. 712, 566 N.W.2d 750 (1997).

## ANALYSIS

■ Initially, we note that as a general rule, attorney fees and expenses may be recovered in a civil action only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *In re Trust Created by Martin, supra.* In support of appellants' claim that they are entitled to an award of costs and attorney fees, in their brief on appeal, appellants raise various legal theories, none of which we determine to have merit. In particular, we address appellants' claims that as a consequence of their having filed this action, they are entitled to an award of costs and attorney fees under §§ 1983 and 1988, § 76-726(1), and the common fund doctrine. We conclude that appellants are not entitled to an award of costs and attorney fees under any of the theories they have advanced. We affirm the district court's order denying appellants' motion for costs and attorney fees.

*Attorney Fees Under §§ 1983 and 1988.*

■ Appellants seek costs and attorney fees under the provisions of §§ 1983 and 1988. Under The Civil Rights Attorney's Fees Awards Act of 1976, courts may award reasonable attorney fees to a prevailing party in a civil rights action brought pursuant to § 1983. See § 1988(b) ("[i]n any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs"). In support of their claim for costs and attorney fees under § 1988, appellants assert that while their properties have " 'not . . .' been illegally taken [by appellee]," brief for appellants at 20, they have averted a denial of their due process rights caused by appellee's declaration that their properties were "blighted" and "substandard." We interpret appellants' argument on appeal as asserting that the filing of the present litigation by appellants acted as the catalyst in prompting the city counsel to amend resolution No. 137-280, and that therefore, appellants are entitled to § 1988 prevailing party status under the "catalyst theory," which

posits that a plaintiff is deemed a "prevailing party" if a lawsuit acted as a catalyst in prompting a defendant to take action to meet plaintiffs' claims despite the lack of judicial involvement in the result. See, e.g., *Little Rock School Dist. v. Special School Dist. 1*, 17 F.3d 260 (8th Cir. 1994). We reject appellants' argument.

Although not in the context of § 1988, the U.S. Supreme Court has interpreted the meaning of " 'prevailing party' " and rejected the catalyst theory. In *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 600, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001), the plaintiffs had filed a lawsuit claiming that language within a state statute violated the Fair Housing Amendments Act of 1988 (FHAA), 42 U.S.C. § 3601 et seq. (2000), and the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 et seq. (2000). After the lawsuit was filed, the state legislature amended the statute to remove the allegedly offending language. Although the lawsuit was subsequently dismissed as moot, the plaintiffs filed a motion for attorney fees under the FHAA and the ADA, both of which permit an award of attorney fees to the "prevailing party." See, § 3613(c)(2) ("the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee and costs"); § 12205 ("the court . . . in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs"). Although no judgment had been entered in favor of the plaintiffs, the plaintiffs in *Buckhannon Board & Care Home, Inc.* claimed that they were entitled to an award of attorney fees under the "catalyst theory." The district court denied the plaintiffs' motion for attorney fees, and that decision was affirmed by the court of appeals. *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, No. 99-1424, 2000 WL 42250 (4th Cir. Jan. 20, 2000) (unpublished disposition listed in table of "Decisions Without Published Opinions" at 203 F.3d 819 (4th Cir. 2000)).

On appeal to the U.S. Supreme Court, the Court noted that "[n]umerous federal statutes allow courts to award attorney's fees and costs to the 'prevailing party.' " *Buckhannon Board & Care Home, Inc.*, 532 U.S. at 600 (citing Civil Rights Act of 1964, Voting Rights Act Amendments of 1975, and The Civil Rights Attorney's Fees Awards Act of 1976). In *Buckhannon*

*Board & Care Home, Inc.*, the Court rejected the catalyst theory as applied to the FHAA and the ADA, stating that

> [t]he question presented here is whether this term [prevailing party] includes a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct. We hold that it does not.

532 U.S. at 600.

In reaching this conclusion, the U.S. Supreme Court noted that when Congress used the term "prevailing party" to designate those parties eligible for an award of litigation fees and costs, it was using a "legal term of art." *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 603, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001). The Court reviewed its prior decisions applying "prevailing party" and concluded that it had awarded attorney fees only when the plaintiff had received a judgment on the merits or obtained a court-ordered consent decree. "These decisions, taken together, establish that enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." 532 U.S. at 604 (quoting *Texas Teachers Assn. v. Garland School Dist.*, 489 U.S. 782, 109 S. Ct. 1486, 103 L. Ed. 2d 866 (1989)). The Court observed that "[n]ever have we awarded attorney's fees for nonjudicial 'alteration of actual circumstances.'" 532 U.S. at 606 (quoting Justice Ginsburg's dissent to majority opinion). After analyzing its prior cases, the Court concluded, "We cannot agree that the term 'prevailing party' authorizes federal courts to award attorney's fees to a plaintiff who, by simply filing a nonfrivolous but nonetheless potentially meritless lawsuit (it will never be determined), has reached the 'sought-after destination' without obtaining judicial relief." *Id.* Accordingly, the Court held that "the 'catalyst theory' is not a permissible basis for the award of attorney's fees under the FHAA . . . and ADA." 532 U.S. at 610.

The *Buckhannon Board & Care Home, Inc.* analysis of "prevailing party" has been extended and applied to attorney fees claims under § 1988. In *Richardson v. Miller*, 279 F.3d 1 (1st Cir.

2002), the plaintiff filed suit under § 1983, claiming the City of Boston and other defendants illegally seized documents belonging to the plaintiff. The city voluntarily returned most of the documents, and the plaintiff dismissed his lawsuit. Thereafter, relying upon the catalyst theory, the plaintiff moved for attorney fees under § 1988.

On appeal, the U.S. Court of Appeals for the First Circuit concluded that the U.S. Supreme Court had "expressly rejected the catalyst theory." 279 F.3d at 4. Although acknowledging that the holding in *Buckhannon Board & Care Home, Inc.* was limited to the FHAA and the ADA context, the court of appeals observed that "the Court specifically noted that the fee-shifting provisions of several statutes, including [§ 1988], should be interpreted consistently." 279 F.3d at 4. The *Richardson* court rejected the plaintiff's claim for attorney fees under § 1988, concluding "we are constrained to follow the Court's broad directive and join several of our sister circuits in concluding that the catalyst theory may no longer be used to award attorney's fees under [§ 1988]." *Id.* (citing, inter alia, *Chambers v. Ohio Dept. of Human Services*, 273 F.3d 690 (6th Cir. 2001); *Johnson v. ITT Aerospace/Communications*, 272 F.3d 498 (7th Cir. 2001); *New York Taxi Drivers v. Westchester County Taxi*, 272 F.3d 154 (2d Cir. 2001); *Johnson v. Rodriguez*, 260 F.3d 493 (5th Cir. 2001); *Bennett v. Yoshina*, 259 F.3d 1097 (9th Cir. 2001)).

■ In the instant case, appellants dismissed their lawsuit after the city council voluntarily amended resolution No. 137-280 to remove appellants' properties from the proposed redevelopment plan. As noted by the district court in its order denying appellants' motion for costs and attorney fees, the court's involvement was de minimis. Specifically, the district court did not enter a judgment on the merits and there was no court-ordered consent decree creating a " 'material alteration of the legal relationship of the parties.' " See *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 604, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001) (quoting *Texas Teachers Assn. v. Garland School Dist.*, 489 U.S. 782, 109 S. Ct. 1486, 103 L. Ed. 2d 866 (1989)). Based upon the U.S. Supreme Court's decision in *Buckhannon Board & Care Home, Inc.* and the extension of the reasoning in that case by the federal courts of appeals to cases

involving claims for attorney fees under § 1988, we conclude that in the absence of a judgment on the merits or a court-ordered consent decree, appellants are not entitled to an award of costs and attorney fees under § 1988. To the extent that language in *Preister v. Madison County*, 258 Neb. 775, 606 N.W.2d 756 (2000), and *Shearer v. Leuenberger*, 256 Neb. 566, 591 N.W.2d 762 (1999), could be interpreted as approving the "catalyst theory" in the context of a claim for attorney fees under § 1988, that language is disapproved. Accordingly, we determine that appellants' claim for attorney fees under § 1988 is without merit.

*Attorney Fees Under § 76-726(1).*

Appellants assert that the district court erred in failing to award them costs and attorney fees pursuant to § 76-726(1). While essentially conceding that no condemnation action had been filed against their properties, appellants nonetheless argue that their lawsuit was, in effect, a preemptive action which forestalled the filing of a condemnation proceeding. As such, appellants claim that they are entitled to an award of costs and attorney fees under § 76-726(1). We disagree.

Section 76-726 is located in chapter 76, Real Property, article 7, Eminent Domain, of the Nebraska Revised Statutes. Section 76-726(1) provides, in pertinent part, as follows:

The court having jurisdiction of a proceeding instituted by an agency . . . to acquire real property by condemnation shall award the owner of . . . such real property such sum as will, in the opinion of the court, reimburse such owner for his or her reasonable . . . expenses, including reasonable attorney's . . . fees, actually incurred because of the condemnation proceedings if (a) the final judgment is that the agency cannot acquire the real property by condemnation or (b) the proceeding is abandoned by the agency. If a settlement is effected, the court may award to the plaintiff reasonable expenses, fees, and costs.

Resolution of appellants' claim for attorney fees under § 76-726(1) involves statutory construction. The meaning of a statute is a question of law, and an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. See *In re Interest of Tamantha S.,*

*ante* p. 78, 672 N.W.2d 24 (2003). We have previously stated that in discerning the meaning of a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *Id.* Further, a court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless; it is not within the province of a court to read anything plain, direct, or unambiguous out of a statute. *Id.*; *Wilder v. Grant Cty. Sch. Dist. No. 0001*, 265 Neb. 742, 658 N.W.2d 923 (2003).

■ In accordance with these precepts, giving effect to the entire statute and applying the statute's plain language, it is apparent that under § 76-726(1), a court-ordered award of costs, expenses, and attorney fees is appropriate only in connection with a proceeding initiated by an agency seeking to acquire real property by condemnation. Given the introductory expression in § 76-726(1) to "[t]he court having jurisdiction," we read "proceeding" in § 76-726(1) as referring to an action filed in court, and therefore, proceedings before the Omaha City Council even if "instituted by an agency" are not the types of proceedings which give rise to attorney fees under § 76-726(1).

In the instant case, the "proceeding" was filed by appellants, not an agency, and the purpose of the proceeding was to obtain declaratory and injunctive relief, not condemnation. There is nothing in the plain language of § 76-726(1) which authorizes the trial court to award costs and attorney fees in the type of lawsuit filed by appellants. We conclude that appellants' claim for costs and attorney fees under § 76-726(1) is without merit.

*Attorney Fees Under Common Fund Doctrine.*
■ Finally, appellants claim the district court erred in failing to award them costs and attorney fees under the common fund doctrine. The determination of whether the common fund doctrine applies is a question of law, with respect to which this court must reach a conclusion independent of the trial court's ruling. *Kindred v. City of Omaha Emp. Ret. Sys.*, 252 Neb. 658, 564 N.W.2d 592 (1997); *In re Estate of Stull*, 8 Neb. App. 301, 593 N.W.2d 18 (1999).

An explanation of the common fund doctrine is found in *Summerville v. North Platte Valley Weather Control Dist.*, 171 Neb. 695, 696-97, 107 N.W.2d 425, 427 (1961), wherein we stated:

[W]here one has gone into a court of equity and, taking the risk of litigation on himself, has created or preserved or protected a fund in which others are entitled to share, such others will be required to contribute their share to the reasonable costs and expenses of the litigation, including reasonable fees to the litigant's counsel.

We have also stated:

" 'An attorney who renders services in recovering or preserving a fund, in which a number of persons are interested, may in equity be allowed his compensation out of the whole fund, only where his services are rendered on behalf of, and are a benefit to, the common fund.' "

*Kindred v. City of Omaha Emp. Ret. Sys.*, 252 Neb. at 662, 564 N.W.2d at 595 (quoting *United Services Automobile Assn. v. Hills*, 172 Neb. 128, 109 N.W.2d 174 (1961)).

Our prior rulings make it clear that the common fund doctrine "presupposes the existence of a fund." *Dennis v. State*, 234 Neb. 427, 445, 451 N.W.2d 676, 687 (1990) (quoting *United Nursing Homes v. McNutt*, 35 Wash. App. 632, 669 P.2d 476 (1983)), *reversed on other grounds sub nom. Dennis v. Higgins*, 498 U.S. 439, 111 S. Ct. 865, 112 L. Ed. 2d 969 (1991). In *Dennis*, we determined that an attorney whose efforts resulted in a finding that a taxation statute was unconstitutional could not recover a fee payable out of all tax refunds which were due as a result of the ruling, because no "common fund" existed.

Similarly, there is no evidence establishing the existence of a fund in the present litigation. Appellants' mere reference to a saving of tax dollars will not suffice. We have reviewed the record in the instant case, and nothing in the record on appeal demonstrates that appellants created, preserved, or protected a fund of money. Absent a fund, the common fund doctrine is inapplicable. Accordingly, we conclude that appellants' claim for costs and attorney fees under the common fund doctrine is without merit.

## CONCLUSION

For the reasons stated above, we conclude that the district court did not abuse its discretion when it denied appellants' claim for costs and attorney fees. Accordingly, we affirm the order of the district court that denied appellants' motion for costs and attorney fees.

AFFIRMED.