JacQaus L. Martin, appellant, v.
Robert Curry et al., appellees.
690 N.W.2d 186

Filed December 7, 2004.    No. A-03-604.

JacQaus L. Martin, pro se.

Jon Bruning, Attorney General, and Amber Fae Herrick for appellees.

INBODY, Chief Judge, and SIEVERS and CARLSON, Judges.

SIEVERS, Judge.

JacQaus L. Martin appeals the decision of the district court for Johnson County which denied his motion for summary judgment and which granted the appellees' motion for summary judgment and dismissed the action.

## I. FACTUAL BACKGROUND

The facts, as set forth in the district court's order of May 9, 2003, are undisputed. Martin is an inmate at the Tecumseh State Correctional Institution (TSCI). At all times relevant to his petition, Martin was housed in the segregation unit at TSCI. On March 15, 2000, Martin was admitted to segregation. Inmates assigned to segregation have their segregation status reviewed by an appropriate unit classification committee every 7 days during the first 60 days of confinement and every 2 weeks for any period exceeding 60 days. On November 6, 2002, a segregation status review was conducted with respect to Martin. His last review was 2 weeks prior, on October 23. The review sheet reflects that his proposed tentative release date from disciplinary segregation was December 1. On November 20 and December 4, segregation status reviews were conducted on Martin. His review sheets reflect that his proposed tentative release date from disciplinary segregation was to be December 16. At the December 4 hearing, the unit classification committee also recommended Martin's placement on administrative confinement status, with a review in 90 days due to the seriousness of Martin's June 7, 2001, assault on

staff at the Nebraska State Penitentiary and continued assaultive and poor behavior while in segregation. On December 16, 2002, the segregation unit manager audited the records of the segregated inmates and updated Martin's records to reflect that his tentative release date from disciplinary segregation would be February 14, 2003, not December 16, 2002. The updated release date was due to two sanctions Martin received in April 2002.

## II. PROCEDURAL BACKGROUND

On December 4, 2002, Martin filed a petition alleging a civil rights claim under 42 U.S.C. § 1983 (2000) and seeking monetary damages and injunctive relief. On December 24, he filed a motion for summary judgment, claiming that the district court should issue an order concerning "retaliatory, conspired classifications, and violations of [his] rights, by placement on administrative confin[e]ment." On February 26, 2003, the appellees filed their answer. On March 12, the appellees filed their motion for summary judgment, claiming that there was no issue as to any material fact and that the appellees were entitled to immunity from suit.

A hearing on the motions for summary judgment was held on May 5, 2003. At the hearing, evidence was submitted, argument was heard, and the motions were taken under advisement. On May 9, the district court denied Martin's motion for summary judgment and granted the appellees' motion for summary judgment. The district court found that the appellees were entitled to summary judgment in their official capacities, based on sovereign immunity, and in their individual capacities, based on qualified immunity. Martin now appeals.

## III. ASSIGNMENTS OF ERROR

Martin alleges, summarized and restated, that the district court erred (1) by not reading exhibit 5 in his original petition, (2) by not affording him equal protection of the laws, (3) by finding that the appellees had qualified immunity, and (4) by finding that the appellees had sovereign immunity.

## IV. STANDARD OF REVIEW

■ Summary judgment is proper when the pleadings and the evidence admitted at the hearing disclose that there is no genuine

issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Zannini v. Ameritrade Holding Corp.*, 266 Neb. 492, 667 N.W.2d 222 (2003). In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## V. ANALYSIS

### 1. Assignment of Error No. 1

Martin argues that the district court erred by not reading exhibit 5 (deposition of a TSCI case manager) in Martin's original petition. In its order, the district court stated, "The exhibits submitted by [Martin] are not sufficient evidence as a matter of law to justify a judgment for [Martin] without more." This statement by the district court suggests that the district court did consider all the evidence submitted by Martin, including exhibit 5. And, Martin points to nothing which would suggest otherwise. Therefore, this assignment is without merit.

### 2. Assignment of Error No. 2

Martin argues that the district court erred by not affording him equal protection of the laws. There is no evidence in the record to show that the district court did not afford Martin equal protection of the laws. Therefore, this assignment is without merit.

### 3. Assignments of Error Nos. 3 and 4

Martin argues that the district court erred in granting the appellees' motions for summary judgment. Specifically, Martin argues that the district court erred by not considering the issues of injunctive relief, finding that the appellees, in their official capacities, had sovereign immunity and, in their individual capacities, had qualified immunity. The appellees argued that they are immune from suit, that there is no genuine issue of material fact, and that they are therefore entitled to judgment as a matter of law.

The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. *Wagner v. Pope*, 247 Neb.

951, 531 N.W.2d 234 (1995). After a movant for summary judgment has shown facts entitling the movant to judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact which prevents judgment as a matter of law for the moving party. *Id.*

(a) Qualified Immunity

Under § 1983, "public officials sued in their individual capacity ' "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." ' " *Shearer v. Leuenberger*, 256 Neb. 566, 577, 591 N.W.2d 762, 769 (1999), *disapproved on other grounds, Simon v. City of Omaha*, 267 Neb. 718, 677 N.W.2d 129 (2004). "Whether an official may prevail in his or her qualified immunity defense depends upon the ' "objective reasonableness of [his or her] conduct as measured by reference to clearly established law." ' " *Id.*

The *Shearer* court adopted a two-part analysis, set forth by *Manzano v. South Dakota Dept. of Social Services*, 60 F.3d 505 (8th Cir. 1995), to determine whether a defendant public official is entitled to qualified immunity. Under the two-part analysis, we must determine (1) whether the plaintiff has alleged the violation of a constitutional right and (2) whether that right was clearly established at the time of the alleged violation. *Shearer, supra.*

In the instant case, Martin claims that the appellees violated his constitutional right to due process when they updated his proposed tentative release date from disciplinary segregation and when they placed him on administrative confinement. Therefore, we now turn to whether any due process right possessed by Martin was clearly established at the time his confinement status was changed.

"For a constitutional right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right.' . . . 'This is not to say an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the pre-existing law the unlawfulness must be apparent.' "

*Shearer*, 256 Neb. at 577-78, 591 N.W.2d at 769. See, also, *Anderson v. Creighton*, 483 U.S. 635, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). In the instant case, the segregation unit manager audited the records of the segregated inmates and updated Martin's records to reflect that his tentative release date from disciplinary segregation would be February 14, 2003, not December 16, 2002—the updated release date was due to two sanctions Martin received in April 2002.

The Nebraska Supreme Court has held that "[i]n order to implicate the protections of the Due Process Clause, there must be a protectible liberty interest of the inmate's at stake." *Abdullah v. Nebraska Dept. of Corr. Servs.*, 246 Neb. 109, 114, 517 N.W.2d 108, 112 (1994). The U.S. Supreme Court has stated that liberty interests

> will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

(Citations omitted.) *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995).

The Eighth Circuit has "consistently held that administrative and disciplinary segregation are not atypical and significant hardships under *Sandin*." *Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002). The punishment of incarcerated prisoners "effectuates prison management and prisoner rehabilitative goals." *Sandin*, 515 U.S. at 485. And, while prisoners do not shed all constitutional rights at the prison gate, " ' "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights." ' " 515 U.S. at 485. Furthermore, "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." 515 U.S. at 485. Therefore, because Martin did not have a "protectible liberty interest," he did not have a "clearly established" due process right at the time of the alleged violation.

Furthermore, the record shows that Martin received notice a classification hearing would be held to review his recommended placement on administrative confinement, that such hearing was

held, and that Martin refused to attend such hearing. This procedure is the constitutionally appropriate standard. See *Swenson v. Trickey*, 995 F.2d 132 (8th Cir. 1993) (citing *Hewitt v. Helms*, 459 U.S. 460, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983) (prison officials are obligated to engage only in informal, nonadversary review of information supporting respondent's administrative confinement, including whatever statement respondent wished to submit, within reasonable time after confining him or her to administrative segregation)). Thus, the appellees, in their individual capacities, are protected by qualified immunity.

(b) Sovereign Immunity
In relevant part, § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

However,

the U.S. Supreme Court has specifically held that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . As such, it is no different from a suit against the State itself. . . . We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."

*Shearer v. Leuenberger*, 256 Neb. 566, 576, 591 N.W.2d 762, 769 (1999) (quoting *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989)), *disapproved on other grounds, Simon v. City of Omaha*, 267 Neb. 718, 677 N.W.2d 129 (2004). An action against a public officer to obtain relief from an invalid act or from an abuse of authority by the officer or agent is not a suit against the state and is not prohibited by sovereign immunity. *Martin v. Nebraska Dept. of Corr. Servs.*, 267 Neb. 33, 671 N.W.2d 613 (2003). However, suits which seek to compel an affirmative action on the part of state officials are barred by sovereign immunity. *Id.*

In the instant case, the actions taken by the appellees—updating Martin's tentative release date from disciplinary segregation and placing him on administrative confinement—are not invalid acts or abuses of authority. As stated above, because Martin did not have a "protectible liberty interest," the appellees did not violate Martin's constitutional right to due process when they updated his tentative release date from disciplinary segregation. Nor did the appellees violate Martin's rights by placing him on administrative confinement. Prison officials are obligated to engage only in an informal, nonadversary review of the information supporting a respondent's administrative confinement, including whatever statement the respondent wished to submit, within a reasonable time after confining him or her to administrative segregation. See *Swenson v. Trickey, supra.* And, the record shows that Martin received notice a classification hearing would be held to review his recommended placement on administrative confinement, that such hearing was held, and that Martin refused to attend such hearing. Thus, the appellees, in their official capacities, are protected by sovereign immunity. Because Martin failed to show that an issue of material fact existed, the appellees were entitled to summary judgment as a matter of law.

## VI. CONCLUSION

For the reasons stated above, the trial court properly denied Martin's motion for summary judgment. Moreover, the trial court properly granted the appellees' motion for summary judgment and dismissed the action. Therefore, the decision of the district court is affirmed.

AFFIRMED.